IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 JUL 18 PM 2:09
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

**NETSPEND CORPORATION,**
        **Plaintiff,**

-vs-                                                                                  **Case No.  A-13-CA-456-SS**

**AXIS INSURANCE COMPANY and AXIS
SURPLUS INSURANCE COMPANY,**
        **Defendants.**

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants AXIS Insurance Company and AXIS Surplus Insurance Company (collectively, AXIS)'s Motion for Summary Judgment [#22], Plaintiff NetSpend Corporation's Response [#24], and AXIS's Reply [#29]; and NetSpend's Motion for Summary Judgment [#24], AXIS's Response [#29], and NetSpend's Reply [#30]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING summary judgment in favor of AXIS.

### Background

This is a lawsuit about a lawsuit. The parties dispute whether AXIS has a contractual duty, arising from certain insurance policies, to defend NetSpend in pending state court litigation brought against NetSpend by Inter National Bank (INB). AXIS maintains it is not obligated to provide the defense, and previously denied NetSpend's claim. NetSpend disagrees, believing it is entitled to the defense, and has sued AXIS for breach of contract, violating Texas Insurance Code section 541.060,

breach of the duty of good faith and fair dealing, and for a declaratory judgment requiring AXIS to fund NetSpend's defense up to the limits of the insurance policy.

## A.     Policy Terms

AXIS issued two consecutive professional liability insurance policies to NetSpend. The first was issued by AXIS Surplus Insurance Company and covered the one-year term from August 20, 2011 to August 20, 2012.[1] The second was issued by AXIS Insurance Company and covered the one-year term from August 20, 2012 to August 20, 2013.[2] The two policies are, at least for purposes of this litigation, identical in wording and coverage scope.[3]

These policies are not general insurance policies, but rather claims-made-and-reported policies. By their terms, they provide coverage for "**Claims** first made and reported to [AXIS] during the **Policy Period**."[4] Pl.'s Mot. Summ. J. [#24-7], Ex. F (2011 Policy), at 1. As relevant here, the policies provide coverage for:

> those sums . . . which [NetSpend] becomes legally obligated to pay as **Damages** or **Claim Expense** because of a **Claim** arising out of a **Wrongful Act** committed . . . [b]y [NetSpend] in the performance of **Professional Services** for others for compensation . . . when such **Claim** is first made against [NetSpend] and reported to [AXIS] during the **Policy Period** or any Extended Reporting Period.

---

[1] This first policy is labeled the AXIS Technet Solutions Insurance Policy No. MKN762362/01/2011.

[2] This second policy is labeled the AXIS Technet Solutions Insurance Policy No. MCN762362/01/2012.

[3] Because the policies are identical, this order cites to relevant language only in the 2011 policy. Identical language can be found in the 2012 policy, and both policies are in the summary judgment record.

[4] The policies use boldface when referring to terms defined elsewhere in the policy, such as "**Claims**" or "**Policy Period**."

*Id.* at 2; *see also id.* at 7 ("This insurance applies when a **Claim** for **Wrongful Acts** is first made against [NetSpend] and reported in writing to [AXIS] during the **Policy Period** [or the Extended Reporting Period].").

This dense paragraph requires some unpacking to understand. A "**Claim**" is "a written demand or written assertion of a legal right made against [NetSpend] seeking **Damages** or non-monetary relief." *Id.* at 10. To be covered, claims must arise out of wrongful acts. A "**Wrongful Act**," as relevant here, is any "[n]egligent act, error, or omission," or "[u]nintentional breach of contract," allegedly committed by NetSpend. *Id.* at 15. The parties agree a lawsuit alleging NetSpend committed some wrongful act—e.g., a lawsuit alleging NetSpend acted negligently—amounts to a covered claim, assuming all other coverage requirements are met. Those other requirements include the making and reporting of the claim. The claim must be both made (against NetSpend) and reported (to AXIS) within the Policy Period or the extended reporting period. The "**Policy Period**" is the one-year coverage period from August to August of each year, for each respective policy. *Id.* at 16. The extended reporting period applies when a claim is made against NetSpend in the last thirty days of the Policy Period. *Id.* at 7. In that scenario, NetSpend has until thirty days after the end of the Policy Period to timely report the claim. *Id.*

Adding yet another layer of complexity, the policies also contemplate multiple claims arising from multiple wrongful acts. Specifically, the policies treat "[a]ll **Claims** arising from the same **Wrongful Act** or **Interrelated Wrongful Acts** [as] a single **Claim**." *Id.* at 9. Such claims "will be deemed to have been made" on either (1) the date the first claim is made against NetSpend, or (2) the date AXIS receives NetSpend's written notice of any wrongful act, whichever is earlier. *Id.* "**Interrelated Wrongful Acts**" are defined as "all **Wrongful Acts** that have as a common nexus any

fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes." *Id.* at 13.

In sum, and as relevant here, the policies provide coverage for claims made against NetSpend based on NetSpend's unintentional conduct. If such claims occur within the Policy Period and are reported to AXIS within the Policy Period, AXIS has a duty to defend NetSpend. *Id.* at 2. This duty is triggered "even if the allegations are groundless, false or fraudulent." *Id.* If the claim either occurs outside the Policy Period or is not reported in a timely manner, there is no coverage and no duty to defend is triggered.

### B. Factual Background

NetSpend sells prepaid, reloadable debit cards to consumers. Because NetSpend is not an FDIC-insured bank, it contracts with third party banking institutions to serve as "issuing banks" for its debit cards, which essentially hold the deposited funds and provide access to certain payment services. One of the banks NetSpend worked with in this venture was INB. Disagreements between INB and NetSpend concerning NetSpend's handling of the two parties' accounts gave rise to the underlying state court lawsuit.

As far back as 2009, INB accused NetSpend of mishandling its accounts. INB, NetSpend, and a third participating bank, MetaBank, entered into a settlement agreement regarding this dispute in May 2009. In 2010, those parties executed a second agreement releasing one another from liability. In June 2011, as INB and NetSpend were preparing to end their business relationship, INB alleged it discovered a "shortfall" of some $10.5 million in the depository accounts it was providing for NetSpend customers. It is this dispute which gave rise to the underlying state court lawsuit, which this Court will term the "Shortfall Litigation."

The Shortfall Litigation officially began on July 13, 2012, when INB filed its Original Petition against NetSpend in the 398th Judicial District Court of Hidalgo County, Texas. *See* Pl.'s Mot. Summ. J. [#24-2], Ex. A (Shortfall Orig. Pet.). The Original Petition sought a declaratory judgment as to the existence of the shortfall, its amount (if any), and the responsibilities of the parties with respect to covering it. INB sought an accounting and injunctive relief, but no damages. On July 31, 2012, INB filed its First Amended Petition. *See id.* [#24-3], Ex. B (Shortfall 1st Am. Pet.). The First Amended Petition made slight changes to the factual allegations, but primarily added a new cause of action for breach of contract, alleging breaches of the 2009 settlement agreement and the parties' License and Servicing Agreement. On September 21, 2012, INB filed its Second Amended Petition, again making changes to the factual allegations and adding new parties and claims. *See id.* [#24-4], Ex. C (Shortfall 2d Am. Pet.). Specifically, the Second Amended Petition added claims for breach of fiduciary duty, fraud, negligence, and unjust enrichment.

NetSpend first notified AXIS of the Shortfall Litigation on September 12, 2012. After INB filed its Second Amended Petition, NetSpend forwarded a copy to AXIS on October 1, 2012. AXIS formally denied coverage and refused to defend the Shortfall Litigation by letter dated October 22, 2012. *See* Pl.'s Mot. Summ. J. [#24-5], Ex. D (Denial Letter). The denial letter acknowledged receipt of the September 12, 2012 notice. *Id.* at 1. While purporting not to take a formal position on when the claim against NetSpend was first made by INB, the letter denied coverage based on the claim-made date of July 13, 2012—the date the Shortfall Original Petition was filed—and NetSpend's failure to timely notify AXIS of that claim. *Id.* at 2–5. The letter went on to note the claim would not have been covered even if it was timely made, because breaches of contract were not covered under the circumstances presented and the Shortfall Litigation did not present a claim for damages. *Id.* at

7–9. Faced with this denial of coverage, NetSpend filed this lawsuit against AXIS while proceeding to defend the Shortfall Litigation at its own expense.

## Analysis

### I.  Legal Standards

#### A.  Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343

(5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**B.     Insurance Policy Interpretation**

"Under Texas law, insurance policies are construed as are contracts generally, and must be interpreted to effectuate the intent of the parties at the time the contracts were formed." *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). "To determine an insurer's duty to defend, Texas courts follow the 'eight corners' rule." *CU Lloyd's of Tex. v. Main Street Homes, Inc.*, 79 S.W.3d 687, 692 (Tex. App.—Austin 2002, no pet.) (citing *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)). Applying the eight corners rule, a court must "consider only the allegations in the underlying complaint and the terms of the insurance policy to determine whether a duty to defend exists, giving the allegations in the petition a liberal interpretation and resolving any doubt in favor of the insured." *Id.* "If the

underlying petition does not allege facts within the scope of coverage, the insurer has no duty to defend." *Id.*

## II. Application

Although the parties' briefing discusses a range of discrete points, the rubber meets the road with a single question: did the Shortfall Original Petition constitute a claim arising out of (or for) a wrongful act?[5] *See* Defs.' Resp. [#29], at 1 ("Thus, the only real issue before this Court is whether the facts alleged in the Original Petition when viewed under the 'eight corners' rule assert a Claim arising out of a wrongful act."); Pl.'s Reply [#30], at 1 ("Thus, the question before this Court is whether INB's Original Petition in Hidalgo County was a 'Claim for Wrongful Acts' within the policies."). If the Shortfall Original Petition made a claim against NetSpend, there is no dispute NetSpend did not timely report that claim and therefore forfeited coverage. If the Shortfall Original Petition did not make a claim against NetSpend, there is no dispute any claim first raised in either the Shortfall First Amended Petition or the Shortfall Second Amended Petition was timely reported and therefore covered under the policies.

In analyzing the Shortfall Original Petition, the Court is mindful of its obligation to construe the allegations liberally and resolve any doubt in favor of the insured, NetSpend. *CU Lloyd's*, 79 S.W.2d at 692. As the Texas Supreme Court has explained it, "'in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.'" *Nat'l Union*, 939 S.W.2d at 141 (quoting *Heyden Newport Chem. Corp. v. S.*

---

[5] The Court's decision does not turn on this semantic distinction between claims "arising out of" wrongful acts and claims "for" wrongful acts. The policies use both phrases to refer to the scope of the coverage provided.

*Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). The Court's focus must remain on "the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Id.* (internal quotation marks omitted); *see also Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1993, writ denied) ("It is not the cause of action alleged that determines coverage but the *facts* giving rise to the alleged actionable conduct.").[6]

Construing the Shortfall Original Petition in favor of coverage, as the Court must do, the Court holds the Shortfall Original Petition stated a claim against NetSpend, and that claim arose out of (or was for) wrongful acts. In the "Introduction" section of the Shortfall Original Petition, INB alleges it was NetSpend's contractual responsibility to "manage[] the movement of the cardholders' funds." Shortfall Orig. Pet. at 2. INB then alleges "NetSpend's management of the movement of those funds . . . has been riddled with errors." *Id.* Those errors are alleged to have resulted in a $10.5 million shortfall in INB's depository accounts. *Id.* INB additionally alleges NetSpend is actively emptying its INB accounts and refusing to address the shortfall issue "in an effort to abandon its contractual responsibilities and wrongly to make INB supply any funds that NetSpend's errors have depleted." *Id.* In short, INB alleged NetSpend had screwed up, and was attempting to force INB to pay for NetSpend's mistakes.

The "Facts" section of the Shortfall Original Petition fleshes out these allegations. INB describes in greater detail NetSpend's contractual responsibilities. *Id.* at 4–5. INB again describes the dispute over the alleged shortfall, and claims "if the shortfall exists, it is NetSpend's

---

[6] The strange irony of this case is that NetSpend's failure to provide timely notice of the Shortfall Original Petition means it cannot prevail if that pleading made a claim against NetSpend. The insured is therefore fighting against the legal standard which ordinarily leans heavily to its benefit, because a liberal construction in favor of coverage is also a construction in favor of summary judgment for the insurer, AXIS. At the same time, AXIS is happy to indulge an insured-friendly construction in favor of finding coverage despite previously denying coverage itself.

responsibility." *Id.* at 8. At the same time, INB represents "NetSpend takes the position that the Alleged Shortfall is INB's problem *even if it is NetSpend's fault.*" *Id.* (emphasis added); *see also id.* at 9 ("These activities show that NetSpend is attempting to saddle INB with those possible liabilities even though the evidence reflects that, if there are deficiencies, they are NetSpend's responsibility.").

INB's petition also contains additional allegations regarding potential breaches of the parties' contracts. INB alleges NetSpend failed to comply with the parties' agreement to have NetSpend transfer all of INB's rights and obligations, as well as all the funds in INB's accounts, to a successor bank, thus facilitating INB's exit from the relationship. *Id.* at 7–8. INB directly accuses NetSpend of breaching the parties' Licensing and Servicing Agreement, and there is no suggestion that breach was accidental. *Id.* at 8 ("NetSpend has breached its obligations under the LSA."). Finally, INB alleges NetSpend is wrongfully transferring funds away from INB accounts without following the protocol agreed to by the parties in an effort to saddle INB with the liability for the shortfall. *Id.* at 8–9. As a remedy, INB seeks a "judgment declaring that the Alleged Shortfall, if any, falls within the scope of the [parties' contracts] and that NetSpend is responsible for satisfying any and all payments to cardholders, Network Providers, and other third parties." *Id.* at 10. INB also seeks an accounting, a temporary restraining order, and a temporary injunction prohibiting NetSpend from depleting INB's accounts below the amount needed to cover the shortfall. *Id.* at 10–11.

Read as a whole, and in the light most favorable to coverage, these allegations amount to a claim arising out of wrongful conduct—in the language of the policies, a written assertion of legal rights against NetSpend seeking non-monetary relief arising out of negligent acts, errors, omissions, or unintentional breaches of contract by NetSpend. INB alleges NetSpend's fund management was "riddled with errors." Nothing in the pleading suggests NetSpend intentionally mismanaged the

funds, or concocted some intentional plan to create the shortfall. The only plausible inference to be drawn from the facts alleged—and, coincidentally, an inference favorable to the insured—is that NetSpend was negligent, or perhaps incompetent. To be sure, there are also allegations of intentional conduct, including an intentional breach of contract no party asserts would be covered by the policy. But those allegations are irrelevant to the Court's analysis. "Once coverage has been found for *any portion of a suit*, an insurer must defend the entire suit." *CU Lloyd's*, 79 S.W.3d at 692 (emphasis added).

AXIS makes much of the "riddled with errors" language, which admittedly appears only one time in the Shortfall Original Petition. NetSpend naturally tries to minimize the import of those words, arguing, for example, it is nonsensical to seek injunctive relief to prevent unintentional conduct. This is not a case of "magic words," where pleading an "error" magically opens the door to coverage. But the words are nevertheless important. INB's characterization of NetSpend's account management paints a picture of a company making mistakes, not intentionally defrauding its business partner. Had INB asserted a fraud claim, there would have been no facts to support it. There is simply no suggestion NetSpend intentionally created the shortfall. The only possible alternative is that the shortfall was created unintentionally, accidentally, or negligently. This is especially apparent when contrasted with the breach of contract allegations, whereby INB makes clear NetSpend *is* acting intentionally to deplete its accounts and leave INB stuck holding the bill. It is that intentional conduct INB sought an injunction to put an end to, not the negligence which already occurred and created the shortfall. INB then sought an accounting and a declaratory judgment holding NetSpend liable for its own negligence and requiring it to cover any shortfall.

NetSpend argues it is impermissible to read the Shortfall Original Petition as sounding in negligence because the parties' contractual obligations would prevent recovery on a tort theory for losses suffered to the subject of the contract. Even granting NetSpend the latter half of that argument, it does nothing to alter the analysis of the facts alleged by INB. The policies obligated AXIS to defend a suit even if the claims alleged were "groundless." If the petition sounded solely in negligence and AXIS's defense was no more than filing a motion to dismiss citing the economic loss rule, it would still be obligated to provide that defense. NetSpend does not cite any authority which holds a legal rule prohibiting recovery on a negligence claim absolves an insurer of its obligation to defend a negligence claim if one is made (or prohibits a plaintiff from pleading one in the first instance). Indeed, in that scenario, NetSpend would no doubt want the defense it bargained for by purchasing the policies.

NetSpend also focuses on the fact INB did not seek money damages. As the Texas Supreme Court has held, a court analyzing a petition to determine if a duty to defend is triggered "must focus on the factual allegations that show *the origin of the damages* rather than on the legal theories alleged." *Nat'l Union*, 939 S.W.2d at 141 (internal quotation marks omitted) (emphasis added). But the Court does not read the language in *National Union* as literally requiring money damages be pleaded. Rather, the Texas Supreme Court is explaining the analytical focus should be on *what caused the harm complained of*, not what technical cause of action the plaintiff asserted. INB certainly claimed NetSpend's error-riddled management of its funds caused the shortfall, and sought to hold NetSpend liable for that negligent conduct. Even if not styled as money damages, INB was seeking to avoid more than ten million dollars in liability and place that liability squarely on NetSpend.

Having determined the Shortfall Original Petition made a claim against NetSpend on July 13, 2012, the various pieces of this case quickly fall into place. July 13, 2012 is within the coverage period of the 2011 Policy, which ran from August 20, 2011 to August 20, 2012. It is more than thirty days from the end of the Policy Period. Accordingly, NetSpend had until August 20, 2012 to timely report the claim in order to secure coverage. There is no dispute NetSpend did not do so; it first notified AXIS of the claim on September 12, 2012, during the coverage period of the 2012 policy. Because the claim was not both made and reported under either policy, no coverage is required. The Texas Supreme Court has held the reporting periods prescribed by claims-made-and-reported policies are "essential to coverage," and therefore the insurer "need not demonstrate any prejudice to deny coverage when an insured does not give notice of a claim within the policy's specified time frame." *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 381 (Tex. 2009). NetSpend's failure to timely report the claim thus ends the coverage dispute.

Because AXIS was not required to defend NetSpend in the Shortfall Litigation, it cannot be liable for breaching its contract by failing to provide a defense. NetSpend does not dispute its second count, alleging a violation of Texas Insurance Code section 541.060 ("Unfair Settlement Practices"), is derivative of and dependent upon its breach of contract claim. In other words, because NetSpend's failure to timely report INB's claim precludes coverage of that claim under either insurance policy, there is no basis for holding AXIS committed any unfair settlement practices in violation of the Texas Insurance Code. Similarly, the recovery provisions asserted by NetSpend—namely Texas Insurance Code sections 541.151 and 541.152—merely provide remedies for a violation of Chapter 541, which there cannot be under these circumstances. Although AXIS does not address NetSpend's fourth claim for breach of the duty of good faith and fair dealing, that claim is also derivative.

NetSpend alleges AXIS improperly denied coverage without any reasonable basis. But because the Court has determined coverage was not required under either policy, AXIS cannot be liable under such a theory. Finally, NetSpend's declaratory judgment request is essentially satisfied by this Court's order adjudicating the parties' coverage dispute. There are no issues left for trial, and this case is concluded.

## Conclusion

NetSpend purchased a specific type of insurance policy from AXIS. Central to the parties' agreement was the requirement NetSpend timely report claims made against it within the Policy Period of each policy. NetSpend failed to do so, and AXIS was therefore not required to provide a defense for the claims made against NetSpend in the Shortfall Litigation. AXIS is therefore entitled to summary judgment, and NetSpend is not.

Accordingly,

IT IS ORDERED that Defendants AXIS Insurance Company and AXIS Surplus Insurance Company's Motion for Summary Judgment [#22] is GRANTED;

IT IS FINALLY ORDERED that NetSpend's Motion for Summary Judgment [#24] is DENIED.

SIGNED this the 18th day of July 2014.

*Sam Sparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE